UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. _____

FRANCISCO INDUSTRIES, INC.,

    Plaintiff,

                                                **JURY DEMAND**

vs.

ASR GROUP INTERNATIONAL, INC.,

    Defendant.

_____/

## COMPLAINT

    Plaintiff Francisco Industries, Inc. ("Francisco"), for its complaint against ASR Group International, Inc. ("ASR"), for violations of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* ("Helms-Burton"), states:

## INTRODUCTION

    1.    This is an action for damages arising from the confiscation of property by the Cuban Government against a sugar company that trafficked in that property in violation of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, Pub. L. 104-114, 110 Stat. 785, 22 U.S.C. §§ 6021-6091, commonly known as the Helms-Burton Act.

    2.    Before Fidel Castro came to power, Francisco was a thriving international sugar business. Founded in New Jersey in 1899, Francisco's 100,000-acre, sugar growing and processing operation was situated in southeastern Camagüey, Cuba, where it surrounded the Port of Guayabal. The Cuban Government confiscated Francisco's estate on August 6, 1960. Before confiscation, Francisco owned, *inter alia*, 42,000 acres of sugar cane, two sugar mills, an alcohol

distillery, 177 miles of railroad track, an airfield, and a concession from the Cuban Government to operate and manage the Port of Guayabal. Despite confiscating its business, the Cuban Government never compensated Francisco.

3.  In 1964, Congress granted jurisdiction to the quasi-judicial Foreign Claims Settlement Commission (the "Commission"), an independent agency within the Department of Justice, to determine the amount and validity of United States nationals' expropriation claims against the Cuban Government. Francisco filed a claim and on February 9, 1971, the Commission certified Francisco's claim for $53,389,438.37, with interest accruing at 6% per annum from the date of loss.[1]

4.  In 1996, Congress observed that the Cuban Government was seeking to raise "hard currency" by "offering foreign investors" opportunities to enter into ventures that benefited from the use of property confiscated by the Cuban Government. Congress passed the Helms-Burton Act to deter such "'trafficking' in confiscated property" by creating a private right of action. That statute allows United States nationals to bring an action against anyone who knowingly and intentionally traffics in property confiscated by the Cuban Government. Starting in 2016 at the latest, ASR began trafficking in property known to be confiscated by the Cuban Government. That property includes Francisco-grown sugar and the Port of Guayabal.

5.  Francisco now seeks damages and attorneys' fees as provided under the Helms-Burton Act based on ASR's violations of the Act.

---

[1] The Foreign Claims Settlement Commission's Decision No. CU-6066 (Feb. 9, 1971), is attached as Exhibit 1. Through CU-6066, the Commission also certified the loss of Francisco's wholly owned subsidiary, Compañia Gandera el Indio, S.A., for $746,000.00, with interest accruing at 6% per annum from the date of loss.

## PARTIES AND RELEVANT NONPARTIES

6. Plaintiff Francisco Industries, Inc. is a United States national and a corporation organized and existing under the laws of the State of New Jersey. Formerly known as The Francisco Sugar Company, Plaintiff is the recipient and owner of certified claim CU-6066.

7. Defendant ASR Group International, Inc., a United States corporation, is the world's largest refiner and marketer of sugar. ASR's headquarters are in West Palm Beach and it conducts substantial business in Florida.

8. The Republic of Cuba, a nonparty to this case, is a sovereign state composed of the island of Cuba, as well as Isla de la Juventud and several minor archipelagos.

9. AZCUBA, a nonparty to this case, is an alter ego of the Cuban Government. AZCUBA is a state-run monopoly that "possesses", "manages", "uses" or "holds an interest in" all of Cuba's sugar growing land, including land confiscated from Francisco.

10. Empresa Terminales Mambisas de la Habana ("Mambisas"), a nonparty to this case, is an alter ego of the Cuban Government. Mambisas presently "possesses", "manages", "uses" or "holds an interest in" all of Cuba's ports, including the Port of Guayabal.

11. Corporación Azucarera del Perú, S.A. ("Coazucar"), a nonparty to this case, is a Peruvian sugar company. Coazucar served as consignee for a shipment of Francisco-grown sugar exported from the Port of Guayabal to ASR's refinery in London, United Kingdom.

## JURISDICTION AND VENUE

12. Defendant ASR is sugar company incorporated in Delaware with headquarters at 1 N. Clematis Street, West Palm Beach, Florida 33401.[2] This Court has personal jurisdiction over ASR because it is headquartered in Florida and conducts business activities in this forum.

13. This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331. Plaintiff brings a civil action that arises under federal law, 22 U.S.C. § 6082.

14. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(1) because ASR resides or is deemed to reside in the Southern District of Florida under 28 U.S.C. § 1391(c) and (d). Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including ASR's decision to purchase Francisco-grown sugar and to export that sugar from Cuba through the Port of Guayabal. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because ASR is subject to personal jurisdiction in this District with respect to this action.

## FACTUAL ALLEGATIONS

**I. Cuba Nationalizes Francisco and Other United States Interests**

15. Founded in New Jersey in 1899, Francisco was a thriving sugar enterprise with a 100,000-acre estate in Camagüey, Cuba. Francisco's estate encompassed 42,000 acres of sugar cane, 43,000 acres of pastures, 10,000 acres of timber, two sugar mills, 177 miles of railroad, and the Port of Guayabal.

---

[2] ASR Group International, Inc. is one of several sugar companies operating out of this address. These companies have the same or similar directors and are, upon information and belief, alter egos of one another. Additional companies using this same address include, for example: American Sugar Refining, Inc.; ASR Group., Inc.; Florida Crystals Corporation; and Fanjul Corp.

16. An appraisal performed by Luis Parajón, whose firm conducted appraisals for approximately 75% of all property losses caused by Cuban nationalization, states that Francisco's sugar growing lands were of "excellent quality" and capable of producing approximately 2.67 tons of sugar per acre.[3] With 42,000 acres of sugar growing land, Francisco could produce as much as 112,000 tons of sugar per year. Francisco's sugar producing land had value because of their potential to grow sugar in the future, thus Mr. Parajón appraised them using a percentage of "the value of the sugar harvested" from that land.[4]

17. Mr. Parajón's appraisal also indicates that Francisco installed and owned the following at Port of Guayabal:[5]

    a. A 453 x 96 meter pier;

    b. A wharf with railroad lines running parallel to the shore in two sections—one 183 x 90 meters and the other 180 x 18 meters;

    c. Three molasses tanks with a total capacity of 4 million gallons;

    d. A dredged 2 kilometer canal leading to the pier with a depth of 32 feet;

    e. An alcohol tank with a capacity of 3 million gallons;

    f. An oil tank with a capacity of 67,000 barrels;

    g. A warehouse capable of storing 70,000 tons of sugar; and

    h. Gantry cranes for shipping sugar in bulk.

18. Francisco's development of the Port of Guayabal began in 1955 when it was awarded a 50-year concession to develop, operate, and manage docking facilities, as well as

---

[3] The appraisal, prepared by Luis Parajón and submitted to Foreign Claims Settlement Commission (April 25, 1967), is attached as Exhibit 2.
[4] The values Mr. Parajón ascribed to Francisco's sugar growing lands were accepted by the Commission without alteration.
[5] *See* Exhibit 2.

8 acres of contiguous inland property.[6] If 50 years proved insufficient for Francisco to earn back its capital spent developing the Port, the concession provided that Francisco could extend its operational and managerial rights beyond the initial 50-year term.

19. After Fidel Castro seized power in 1959, the Cuban Government began nationalizing every foreign-owned business on the island. On August 6, 1960, Cuba confiscated and nationalized Francisco through Resolution No. 1 of Cuban Law No. 851. The Francisco Sugar Company was explicitly identified, number 14 on the list, as having been nationalized by Cuban Law No. 851.

20. Cuba's confiscation of the sugar industry was well known to the international sugar community. Cuban laws nationalizing Francisco's property were public record as was the Commission's certification of Francisco's claim. The Castro Government passed multiple laws in 1960, including Cuban Law No. 851, ordering government agencies to confiscate all American-owned property in Cuba. As part of a broad response to the Cuban Government's actions, Congress authorized the Commission to consider claims relating to Cuba's confiscation of property. In a public decision, the Commission granted relief for claims arising from the Cuban Government's nationalization and confiscation of Francisco, including the loss of the Port of Guayabal concession.[7]

21. ASR also had actual knowledge of Cuba's confiscation of Francisco. ASR executive José F. Fanjul, Jr.'s father has owned 3,989 shares of Francisco for many years. José F. Fanjul, Jr.'s grandfather, Alfonso Fanjul, worked for Francisco prior to confiscation and

---

[6] Through its wholly owned subsidiary Compañia Maritima Guayabal, S.A., Francisco was awarded the Port of Guayabal concession pursuant to Fulgencio Batista's Presidential Decree No. 3,749, dated November 10, 1955. That Decree was published in La Gaceta de La Habana on November 15, 1955.
[7] *See* Exhibit 1.

6

served as the legal representative of Compañia Maritima Guayabal, S.A. when it acquired the Port of Guayabal concession in 1955.

22. Francisco received no compensation from the Cuban Government in 1960. Nor did the Cuban Government later compensate Francisco from 1960 to the present. Francisco's lawsuit seeks recovery for ASR's trafficking in Francisco's confiscated property, without Francisco's consent, as authorized under Helms-Burton.

## II. Francisco Maintains a Certified Claim

23. In response to the Cuban Government's confiscation, Francisco filed a claim with the Commission pursuant to Title V of the International Claims Settlement Act of 1949. The Commission found that Francisco qualified as a United States national within the meaning of the International Claims Settlement Act.

24. The Commission evaluated the validity and amount of Francisco's claim and the value of Francisco's expropriated properties, rights, and interests. In support of its claim, Francisco provided the Commission with "three appraisals of the land, cultivations, buildings, installations, equipment and machinery."[8] Francisco also submitted "affidavits of company officers, a report of loses submitted to the Department of State in August, 1960, financial statements" and photographs.[9] After considering the evidence, including Mr. Parajon's appraisal, on February 9, 1971, the Commission certified that Francisco suffered a loss of $53,389,438.37 as a result of the Cuban Government's expropriation. The Commission awarded interest on that amount at the rate of 6% per annum from the date of loss to the date of settlement.

25. Francisco maintains its certified claim to confiscated Cuban property.

---

[8] *Id*.
[9] *Id*.

### III.  Congress Enacts the Economic Embargo of Cuba and Helms-Burton

26. After Castro's rise to power, the United States sought to elevate the promotion and protection of human rights and fundamental freedoms over profits by imposing an economic embargo against Cuba.  In 1996, Cuba was seeking to circumvent the embargo by using "confiscated" property to raise "badly needed" finances and expertise from "foreign investors."

27. "To deter" this "trafficking in wrongfully confiscated property," Helms-Burton provides United States nationals who were the victims of these confiscations "a judicial remedy in the courts of the United States" that "den[ies] traffickers any profits from economically exploiting Castro's wrongful seizures."

28. Title III of Helms-Burton provides that any person who traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable for monetary damages to the United States national who owns a claim to that property.  "United States national" means any United States citizen or any other legal entity organized under the laws of the United States, or of any State.  "Traffick[ing]" is defined broadly.  It includes purchasing, receiving, possessing, controlling, managing, using, or holding an interest in confiscated property without the owner's consent.  It also includes "engag[ing]" in "commercial activity using or otherwise benefiting from confiscated property" without the owner's consent.  Persons who "cause[ ]," "direct[ ]," "participate[ ] in," or "profit[ ] from" trafficking by another party without the owner's consent engage in trafficking as well.

### IV.  ASR's Trafficking in Confiscated Property in Violation of Helms-Burton

29. ASR violated Helms-Burton by purchasing Francisco-grown cane sugar and exporting that sugar from the Port of Guayabal to ASR's refinery in London.  Liability for trafficking extends to any party, including ASR, that engages in commercial activity using or

otherwise benefiting from Francisco's confiscated lands. Liability for trafficking also extends to those that participate in or profit from traffickers growing sugar cane on or conducting commercial activity using Francisco's confiscated property. ASR's conduct constitutes trafficking in violation of Helms-Burton.

30. As just one example, on or about July 27, 2016, ASR knowingly and intentionally purchased a shipment of cane sugar that all presently known facts suggest derived from Francisco's confiscated assets north of Guayabal. Francisco's arable land, as well as sugar produced by that land, constitutes confiscated property as defined by the Helms-Burton Act. AZCUBA, an alter ego of the Cuban government, maintains a monopoly on all aspects of the sugar business in Cuba. AZCUBA is as trafficker according to Helms-Burton because it "possesses", "manages", "uses" or "holds an interest in" Francisco's sugar growing land, and it engaged in "a commercial activity using or otherwise benefitting from confiscated property" when it sold Francisco-grown sugar.

31. The Francisco-grown sugar was shipped from the Port of Guayabal on July 27, 2016, and delivered to ASR's London refinery on August 16, 2016. The bill of landing for the shipment states in relevant part:[10]

| Bill of Lading Number | 20511866210 |
| --- | --- |
| Shipment Date | 2016-07-27 |
| Shipment Year | 16 |
| Arrival Date | 2016-08-16 |
| Shipment Origin | Cuba |
| Port of Lading | Guayabal (CU) |
| Country of Sale | United Kingdom |
| Transport Method | Maritime |
| HS Code | 1701.14.0000 |
| Consignee | Coazucar |

---

[10] *See* Port of Guayabal Shipment Profile, attached as Exhibit 3.

32. This shipment contained 11,000 tons of raw cane sugar. HS code 1701.14.000 is the harmonized shipping code for "Cane Sugar, Raw, In Solid Form".[11]

33. ASR knowingly and intentionally chose to export this shipment from the confiscated Port of Guayabal. Mambisas, an alter ego of the Cuban government operates and manages all Cuban ports, including the Port of Gauayabl. Mambisas is as trafficker according to Helms-Burton because it "possesses", "manages", "uses" or "holds an interest in" the confiscated Port of Guayabal, and it engaged in "a commercial activity using or otherwise benefitting from confiscated property" when Mambisas used Francisco's port facilities to export raw cane sugar.

34. Coazucar served as consignee and importer of record for this shipment. In maritime shipping, a consignee is often a freight forwarder, taking "possess[ion]" of and moving cargo across multiple modes of transportation from a seller to the ultimate purchaser.

35. ASR received the raw cane sugar at its United Kingdom refinery on August 16, 2016. Although titled in the name of Tate & Lyle PLC, ASR admitted, on its website, that *ASR* owns and operates that refinery.[12] ASR is the only processor of cane sugar in the United Kingdom.[13] All other sugar refineries in the United Kingdom process beet sugar.

36. ASR's receipt, processing, and profiting from Francisco-grown sugar violated Helms-Burton in at least four ways. First, ASR "purchase[d]", "receive[d]", possesse[d]", and "use[d]" Francisco-grown sugar. Second, ASR "direct[ed]" Coazucar, as consignee for the

---

[11] *See* Datamyne, Cane Sugar, available at: https://www.datamyne.com/hts/17/1701140000 (last visited April 29, 2021).

[12] It's website, copyrighted 2021, confirms that ASR Group International, Inc. "owns and operates" the cane sugar refinery in London, United Kingdom.

[13] *See* Unearthed, *Brexit-backing sugar refiner gets 'sweetheart deal' on cane imports* (Aug. 8, 2020), available at: https://unearthed.greenpeace.org/2020/08/08/brexit-sugar-cane-tate-lyle-sweetheart-conservative/ (last visited April 29, 2021).

shipment, to "possess[]", "receive[]", "acquire[] or hold[] an interest" in Francisco-grown sugar. Third, ASR "engage[d]" in "a commercial activity using or otherwise benefitting from confiscated property" of Francisco. Fourth, ASR ultimately "profit[ed]" from AZCUBA, the Cuban entity growing cane on Francisco's land, "sell[ing]", transfer[ing]", "distribut[ing]", broker[ing]", or engaging in "a commercial activity using or otherwise benefitting from confiscated property", Francisco-grown sugar.

37.     ASR further violated Helms-Burton by exporting Francisco-grown sugar from the Port of Guayabal. Francisco's Port of Guayabal concession never expired. When confiscated, Francisco had a balance of 47 years of concessionary rights remaining. In addition, the three years Francisco operated the port were insufficient to generate a complete return of its investment, and therefore the concession remains in effect today. Exporting the Francisco-grown sugar or any other product from the Port of Guayabal violated Helms-Burton in two ways. First, ASR "engage[d] in a commercial activity using" the Port of Guayabal. Second, ASR "participate[d] in" or ultimately "profit[ed]" from Mambisas', the Cuban state-owned port operator's, "possess[ion]" and "use[]" of the Port of Guayabal, as well as Mambisas' engaging in "a commercial activity using or otherwise benefitting from" the Port of Guayabal.

38.     ASR trafficked with full knowledge that Francisco's sugar-growing lands and the Port of Guayabal had been confiscated by the Cuban Government in 1960 using public laws specifically identifying Francisco. Francisco's certified claim also is publicly available[14] and

---

[14] *See* Commission, Final Opinions and Orders, available at: https://www.justice.gov/fcsc/final-opinions-and-orders-5 (last visited April 29, 2020).

11

was the subject of news reports in 2015—before ASR began trafficking in Francisco's confiscated property.[15]

39. Francisco never consented to ASR's trafficking in the confiscated property.

## ALLEGATIONS AS TO DAMAGES

40. Helms-Burton provides statutory measures of compensatory and treble damages that Francisco demands in these proceedings, along with attorneys' fees and costs.

41. Francisco is entitled to compensatory damages equaling the greater of the amount certified by the Commission plus interest, or the fair market value of Francisco's property. That fair market value is either the current value of the property, or the value of the property when confiscated in 1960 plus interest, whichever is greater.

42. Treble damages against ASR are warranted pursuant to 22 U.S.C. § 6082(a)(3)(A) and (C) because Francisco holds a certified claim.

## TOLLING OR NON-ACCRUAL OF STATUTE OF LIMITATIONS

43. Each President of the United States suspended the right to sue under Helms-Burton from when it would have taken effect on August 1, 1996, through May 2, 2019, when the Executive Branch lifted that suspension. To the extent that Francisco's claim accrued against ASR during that suspension period, ASR's liability "can't be extinguished subsequently."[16] The President lifted the "suspension period" on May 2, 2019, and Francisco brought suit on May 2, 2021.

---

[15] *See e.g.*, Nick Mirnoff, *The Largest U.S. Property claims in Cuba*, THE WASHINGTON POST (Dec. 8, 2015), (Francisco has the ninth-largest certified claim), available at https://www.washingtonpost.com/news/worldviews/wp/2015/12/08/the-20-largest-u-s-property-claims-in-cuba/ (last visited April 29, 2020).
[28] *See* Office of the Press Secretary, Briefing on Helms-Burton Title III Suspension 7/16/96, 1996 WL 396125, at *5 (July 16, 1996).

44. ASR knowingly and intentionally profited by trafficking in Francisco's confiscated property by purchasing Francisco-grown cane sugar and exporting that sugar from the confiscated Port of Guayabal to ASR's London refinery, among other things. ASR's use of the London refinery was intended to prevent discovery by U.S. regulators. Francisco had no actual knowledge of ASR's trafficking in Francisco's property before May 2, 2019.

## COUNT I
## Liability for Trafficking Pursuant to Helms-Burton

45. Francisco re-alleges and incorporate paragraphs 1-44 above as if fully set forth herein.

46. Francisco respectfully request that the Court: (1) enter a judgment against ASR for monetary damages in accordance with § 6082(a), including (a) the greater of the amount of Francisco's certified claim plus interest, the current fair current value of Francisco's property, or the fair market value of the property when confiscated plus interest, and (b) treble damages; (2) award attorneys' fees and costs in accordance with § 6082(a)(1)(A)(ii); and (3) for any further relief deemed appropriate by this Court.

## DEMAND FOR JURY TRIAL

Francisco requests a jury trial for any and all counts for which a trial by jury is permitted by law.

Dated: May 2, 2021                    Respectfully submitted,

                                                **KOZYAK TROPIN & THROCKMORTON, LLP**
*Counsel for Plaintiff*
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508

By: */s/ Javier A. Lopez*
    Javier A. Lopez, Esq.
    Florida Bar No. 16727
    jal@kttlaw.com
    Jorge L. Piedra, Esq.
    Florida Bar No. 88315
    jpiedra@kttlaw.com
    Evan J. Stroman, Esq., CPA
    Florida Bar No. 118929
    estroman@kttlaw.com